# EXHIBIT C

Electronically Filed
3/5/2019 4:05 PM
Laura Richard
County Clerk
Fort Bend County, Texas

**19-CCV-064447**

NO. _____

| | | |
|---|---|---|
| YEMISI AYORINDE,<br>*Plaintiff* | §<br>§<br>§ | IN THE COUNTY CIVIL COURT<br><br>Fort Bend County - Court at Law 3 |
| v. | §<br>§ | AT LAW NUMBER _____ |
| GREAT AMERICAN ASSURANCE<br>COPMANY, *et al*<br>*Defendants* | §<br>§<br>§<br>§ | <br><br>FORT BEND COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION
### EXPEDIATED ACTION UNDER TRCP 169

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the above styled Plaintiff who files this, its Original Petition and Requests for Disclosure, against GREAT AMERICAN ASSURANCE COMPANY (herein "Defendant Insurance Company") and BBVA COMPASS BANK (herein "Defendant Mortgagee" and for cause of action would respectfully show the court as follows:

### I.

### Preliminary Information and Definitions

1. Insured:             YEMISI AYORINDE (herein "Plaintiff")

   Policy Number:        1250615 (herein "Policy")

   Claim Number:         836617727 (herein "Claim" or "Claim Number")

   Date of Loss:         AUGUST 2017 (herein "Date of Loss")

   Insured Property:     20935 BRIGHTLAKE BEND, RICHMOND, TX 77407

                         (herein "Property" or "Insured Property")

   Insurer:              GREAT AMERICAN ASSURANCE COMPANY (herein "Defendant")

   Mortgagee:            BBVA COMPASS BANK (herein "Defendant Mortgagee")

## II.

### Discovery Control Plan

1. Plaintiff intends for discovery to be conducted under Level 1 of Rule 190 of the Texas Rules of Civil Procedure.

## III.

### Request for Expedited Trial Date

2. Plaintiff requests that the set the case for a trial date that is within 90 days after the discovery period in Rule 190.2(b)(1) ends and objects to any continuance thereof.

## IV.

### Parties

3. Plaintiff is an individual who resides in Texas.

4. Defendant Insurance Company is a Texas "Surplus Lines" company registered to engage in the business of insurance in the State of Texas. This Defendant Insurance Company may be served with process by in person or certified mail, return receipt requested, by serving: (1) the president, an active vice president, secretary, or attorney in fact at the home office or principal place of business of the company; or (2) leaving a copy of the process at the home office or principal business office of the company during regular business hours. Defendant Insurance Company's Attorney for Service is: CT CORPORATION at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-4284.

5. Defendant Mortgagee is a successor by merger to BBVA COMPASS BANK and may be served with process in person or certified mail, by serving its registered agent: C T CORPORATION SYSTEM, 1999 BRYAN ST, STE 900, DALLAS, TX 75201-3136.

## V.

### Jurisdiction

6.  The court has jurisdiction over the cause of action because the amount in controversy is within the jurisdictional limits of the court and Plaintiff seeks only monetary relief less than $100,000.00 or less, including damages or any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees. Specifically, Plaintiff is seeking damages in the amount of $74,000.00.

7.  The Court has jurisdiction over Defendant Insurance Company because Defendant Insurance Company engages in the business of insurance in the State of Texas and the cause of action arises out of Defendant Insurance Company's business activities in the State of Texas.

## VI.

### Venue

8.  Venue is proper in FORT BEND County, Texas because the insured property is situated in FORT BEND County, Texas and/or the contract was signed in FORT BEND County, Texas. TEX. CIV. PRAC. & REM. CODE. § 15.032

## VII.

### Facts:

### A.

### Brief Summary

9.  This is a lawsuit involving damage to an insured property under a lender placed policy to which Defendant Mortgagee and Defendant Insurance Company entered into a scheme to overcharge consumers for forced insurance, avoid and delay properly adjusting insured losses, in exchange for unearned kickbacks.

10. The scheme creates a conflict of interest to the detriment of the property owner resulting in valid insurance claims not being timely paid and valid insurance claims being severely underpaid and denied.

**B.**

**The Lender-Placed Policy Ponzi-Scheme**

11. Lenders and servicers force place insurance when a borrower fails to obtain or maintain proper hazard, flood, or wind insurance coverage on property that secures a loan. Under the typical mortgage agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to "force place" a new policy on the property and then charge the premiums to the borrower. Plaintiff does not challenge the practice of force-placing insurance, but rather the manner in which Defendants exercise their power to force place insurance under borrowers' mortgages and the law.

12. The arrangements comprise an extremely lucrative profit-making scheme that yields the major mortgage lenders and servicers and their selected insurers hundreds of millions of dollars annually. These companies and their affiliates enter into exclusive relationships with the major mortgage lenders and servicers to provide the policies. To maintain their exclusive relationships with these lenders, the insurers pay unearned "kick-backs" of a percentage of the force-placed premiums ultimately charged to the borrower, offer them subsidized administrative services, and/or enter into lucrative captive reinsurance deals with them.

13. The money to finance the forced-place insurance schemes comes from unsuspecting borrowers who are charged inflated force-placed insurance premiums by lenders. In many instances borrowers are required to pay for backdated insurance coverage to cover periods during which no claims were made, coverage that exceeds the legal requirements, or they are charged additional improper fees.

14. Defendants' force-placed insurance scheme takes advantage of the broad discretion afforded the lenders and/or servicers in standard form mortgage agreements. These agreements require the borrower to carry hazard insurance sufficient to cover the lender's interest in the property against

fire and other perils. Some mortgage agreements also require borrowers to maintain flood insurance on their properties sufficient to cover the lender's risk from flood damage. If a homeowner's hazard or flood policy lapses, the mortgage agreement allows the lender to "force place" a new policy on the property at the borrower's expense.

15. Although force-placed insurance is designed to protect the lender's interest in the property that secures the loan and thus should not exceed that interest, lenders often purchase coverage from their exclusive insurers in excess of that required to cover their own risk. And, as a matter of practice, the major lenders and servicers collude with the two major force-placed insurers to manipulate the force-placed insurance market and artificially inflate the premiums charged to consumers, resulting in premiums up to ten times greater than those available to the consumer in the open market.

16. Though part of the extra expense can be explained by the higher risks associated with insuring the homes of delinquent borrowers, force-placed policies generate profit margins unheard of elsewhere in the insurance industry— even after accounting for the generous commissions and other payments that servicers demand. Lenders, servicers, and force-placed insurers reap these unconscionable profits entirely at the expense of the unsuspecting borrower.

### B.

### The Insurance Claim

17. Plaintiff was an additional insured of the Policy issued by Defendant Insurance Company. Plaintiff owns the insured property. Defendant Mortgagee is the named insured in the underlying insurance Policy.

18. Though Defendant Mortgagee has a small financial interest in the insured property, it also has a giant financial interest, as described above, in profitability of the insurance sold by Defendant

Insurance Company – thus creating an enormous conflict of interest to the detriment of the property owner.

19. This conflict of interest leaves Defendant Insurance Company free to intentionally underpay, delay, and deny valid insurance claims at very little risk of being caught or sued.

20. Defendant Mortgagee has aided and/or abetted Defendant Insurance Company in its violation of Texas Insurance Code, Chapters 541 and 542 and Texas Business and Commerce Code, Chapter 17 in underpaying, delaying, and denying valid insurance claims.

21. Defendant Insurance Company sold the policy, insuring the property that is the subject of this lawsuit to Plaintiff. The Plaintiff suffered a significant loss with respect to the property at issue, and suffered additional living expenses.

22. Plaintiff submitted its claim to Defendant Insurance Company with a Date of Loss for damage to the dwelling and contents of the home.

23. Defendant Insurance Company assigned a Claim Number to Plaintiff's claim.

24. Defendant Insurance Company failed to properly adjust the claim and summarily improperly paid the claim with obvious knowledge and evidence of serious cosmetic and structural damage.

25. Defendant Insurance Company improperly paid Plaintiffs claim for replacement of the property, even though the policy provided coverage for losses such as those suffered by Plaintiff.

26. Due to the enormous conflict of interest, Defendant Mortgagee has made no attempt to make Defendant Insurance Company pay for adequate repairs of the insured property.

27. Due to the enormous conflict of interest, Defendant Mortgagee has made no attempt to timely make Defendant Insurance Company pay for sums owed under the lender-placed policy.

28. Defendant Insurance Company failed to perform its contractual duty to adequately pay for property damages under the terms of the policy.  Defendant Insurance Company failed and refused to pay the full proceeds of the policy although due demand was made for proceeds to be

paid in an amount sufficient to cover the damaged property and all conditions precedent to recovery upon the policy had been carried out and accomplished by Plaintiff. Such conduct constitutes breach of the insurance contract between Defendant Insurance Company, Plaintiff, and Defendant Mortgagee.

29. Defendant Insurance Company misrepresented to Plaintiff that the damage to the property was not in excess to the amount paid even though the damage was caused by a covered occurrence. Defendant Insurance Company's conduct constitutes violations of the Texas Insurance Code.

30. Defendant Insurance Company failed to make an attempt to settle Plaintiff's claim in a fair manner although they were aware of their liability to Plaintiff under the policy. Defendant Insurance Company's conduct constitutes violations of the *Texas Unfair Competition and Unfair Practices Act.* TEX. INS. CODE § 541.060(2).

31. Defendant Insurance Company failed to explain to Plaintiff the reasons for its offer of an inadequate settlement. Specifically, Defendant Insurance Company failed to offer Plaintiff adequate compensation, without any explanations why full payment was not being made. Furthermore, Defendant Insurance Company did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the policies nor did it provide any explanation for the failure to adequately settle Plaintiff's claim. Defendant Insurance Company's conduct constitutes violations of the *Texas Unfair Competition and Unfair Practices Act.* TEX. INS. CODE § 541.060(3).

32. Defendant Insurance Company failed to affirm or deny coverage of Plaintiff's claims within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claims, in writing from Defendant Insurance Company. Defendant Insurance Company's conduct constitutes violations of the *Texas Unfair Competition and Unfair Practices Act.* TEX. INS. CODE § 541 060(4).

33. Defendant Insurance Company refused to fully compensate Plaintiff, under the terms of the policy, even though Defendant Insurance Company failed to conduct a reasonable investigation. Specifically, Defendant Insurance Company performed an outcome-oriented investigation of Plaintiffs claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses on the property. Defendant Insurance Company's conduct constitutes violations of the *Texas Unfair Competition and Unfair Practices Act*. TEX. INS. CODE § 541.060(7).

34. Defendant Insurance Company failed to meet its obligations under the Texas Insurance Code regarding acknowledging Plaintiff's claims, beginning investigations to Plaintiff's claims and requesting all information reasonably necessary to investigate Plaintiff's claim within fifteen (15) days of receiving notice of Plaintiff's claims. Defendant Insurance Company's conduct constitutes violations of the *Texas Prompt Payment of* Claims *Act*. TEX. INS. CODE § 542.055.

35. Defendant Insurance Company failed to accept or deny Plaintiff's full and entire claims within fifteen (15) business days of receiving all required information. Defendant Insurance Company's conduct constitutes a violation of the *Texas Prompt Payment of Claims Act*. TEX. INS. CODE § 542.056.

36. Defendant Insurance Company failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, Defendant Insurance Company has delayed full payment of Plaintiffs claims longer than allowed and, to date, Plaintiff has not yet received full payment for the claims. Defendant Insurance Company's conduct constitutes a violation of the *Texas Prompt Payment of Claims Act*. TEX. INS. CODE § 542.055.

37. From and after the time Plaintiffs claims were presented to Defendant Insurance Company, the liability of Defendant Insurance Company to pay the full claims in accordance with the terms of the policy was reasonably clear. However, Defendant Insurance Company has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment. Defendant Insurance Company's conduct equates to breaches of the

common law duty of good faith and fair dealing.

38. As a result of Defendant Insurance Company's acts and omissions, Plaintiff was forced to retain the attorney who is representing Plaintiff in this cause of action.

39. Plaintiffs experience is not an isolated case. The acts and omissions Defendant Insurance Company and Defendant Mortgagee committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendant Insurance Company with regard to forcing consumers to purchase insurance at rates that far exceed the norm and in handling of these types of claims. The entire process of Defendant Insurance Company and Defendant Mortgagee is unfairly designed to reach favorable outcomes for each company at the expense of the consumer.

## VIII.

### Causes of Action:

40. Plaintiff incorporates Paragraphs 1 to 40 by reference.

### COUNT 1:

### AGAINST ALL DEFENDANTS

### Breach and Anticipatory Breach of Contract

41. Defendant Insurance Company's conduct, as described in this petition, constitutes a breach of the insurance contract. Plaintiff anticipates that Defendant Insurance Company will continue in such breaches of contract.

42. Because of the conflict of interest created by the lender-placed policy scheme as described above, Defendant Mortgagee has aided and abetted Defendant Insurance Company in breaching the underlying insurance contract.

43. Defendant Insurance Company's failure and refusal, as described above, to pay the adequate compensation as is obligated to do under the terms of the policy in question and under the laws of the State of Texas, constitutes material breaches of the insurance contract.  Furthermore, Plaintiff has suffered damages in the form of actual damages, consequential damages and reasonable and necessary attorney's fees for such violations of the Texas Insurance Code.

44. Defendant Insurance Company's conduct constitutes multiple violations of the *Texas Unfair Compensation and Unfair Practices Act.* TEX. INS. CODE, Chapter 541.  All violations under this article are made actionable by TEX. INS. CODE § 541.151.

45. Defendant Insurance Company and Defendant Mortgagee's unfair practices, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue and the price thereof, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060 and § 541.061.

46. Defendant Insurance Company's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendant Insurance Company's liability under the policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060 and § 541.061.

47. Defendant Insurance Company's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claims, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060 and § 541.061.

48. Defendant Insurance Company's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claims Plaintiff or to submit a reservation of rights to Plaintiff constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060 and § 541.061.

49. Defendant Insurance Company's unfair settlement practice, as described above, of refusing to pay Plaintiffs claims without conducting a reasonable investigation, constitutes an unfair method of competition an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.051, § 541.060, and § 541.061. Noncompliance with Texas Insurance Code Chapter 542: "The Prompt Payment of Claims Act"

50. Defendant Insurance Company's conduct constitutes multiple violations of the *Texas Prompt Payment of Claims Act.* TEX. INS. CODE, Chapter 542. All violations made under this article are made actionable by TEX. INS. CODE § 542.060.

51. Defendant Insurance Company's failure, as described above, to acknowledge receipt of Plaintiffs claims, commence investigation of the claims, and request from Plaintiff all items, statements, and forms that they reasonable believed would be required within the applicable time constraints, constitutes a non-payment of the claims. TEX. INS. CODE § 542.055-542.060.

52. Defendant Insurance Company's delay of payment of Plaintiffs claims, as described above, following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for constitutes a non-prompt payment of the claims. TEX. INS. CODE § 542.055-542.060.

**COUNT 2:**

### AGAINST DEFENDANT INSURANCE COMPANY

#### Breach of the Duty of Good Faith and Fair Dealing

53. Defendant Insurance Company's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insured's in insurance contracts. For example see: *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 1997 Tex. LEXIS 69 (Tex. 1997). Defendant Insurance Company insurance company acted in bad faith when it denied a claim by plaintiff insureds; in an action for property damage due to plumbing leaks the insurer was found to have hired an investigating firm biased against finding liability, failed to follow up on substantial information indicating the leaks were the cause of damage, and the court held that denial of coverage could have been pre-textual.

54. Defendant Insurance Company's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claims, although at that time Defendant Insurance Company knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

### COUNT 3:

### AGAINST ALL DEFENDANTS

#### Deceptive Trade Practices & Unconscionable Conduct – Knowledge and Intent

55. Each of the acts described above, together and singularly, was done "knowingly" and "intentionally" and was a producing cause of Plaintiff's damages described therein by *Texas Deceptive Trade Practices Act.*

56. Each of the acts described above, together and singularly, constitute a violation of the *Texas Deceptive Trade Practices Act* pursuant to its tie-in provision for Insurance Code Violations.

57. Accordingly, Plaintiff also brought each and every cause of action alleged above under the *Texas Deceptive Trade Practices Act* pursuant to its tie-in provision.

58. At all times material hereto, Plaintiff was a consumer, as defined under § 17.45(4) of the Texas

Business and Commerce Code, who purchased insurance products and services from Defendant

Insurance Company and Defendant Mortgagee.

59. Defendants are properly subject to the liability on this claim because each of them is a "person," as

defined under § 17.45(3) of the Texas Business and Commerce Code.

60. Defendant Insurance Company and Defendant Mortgagee have violated the *Texas Deceptive Trade*

*Practices Act* in one or more of the following manners:

a. Causing confusion or misunderstanding as to the source, sponsorship, approval, or

certification of goods or services;

b. Representing the goods or services have sponsorship, approval, characteristics, ingredients,

uses, benefits, or qualities which they do not have or that a person has a sponsorship, approval,

status, affiliation, or connection which he does not;

c. Advertising goods or services with intent not to sell them as advertised;

d. Making false or misleading statements of fact concerning the reasons for, existence of, or

amount of price reductions;

e. Representing that an agreement confers or involves rights, remedies, or obligations which it

does not have or involve, or which are prohibited by law;

f. Misrepresenting the authority of a salesman, representative or agent to negotiate the final terms

of a consumer transaction;

g. Failing to disclose information concerning goods or services which was known at the time of

the transaction and such failure to disclose such information was intended to induce the

consumer into a transaction into which the consumer would not have entered had the

information been disclosed; and/or

h.      Engaging in an unconscionable course of conduct.

61. Defendant Mortgagee aided and/or abetted the *Texas Deceptive Trade Practices Act* violations described above.  Defendant Mortgagee, upon information and belief, knew that the actions of Defendant Insurance Company constituted violations of *Texas Deceptive Trade Practices Act*. Defendant Mortgagee nonetheless intended to aid and/or abet those violations.

62. Defendant Mortgagee, upon information and belief, provided substantial assistance and/or encouragement to Defendant Insurance Company in committing the *Texas Deceptive Trade Practices* violations.

## COUNT 4:

### AGAINST ALL DEFENDANTS

### Violations of Texas Prompt Payment of Claims Act:

### Texas Insurance Code, Chapter 542:

### Strict Liability with No Good Faith Exception

63. Defendant Insurance Company's conduct, as described above, constitutes multiple violations of *Texas Prompt Payment of Claims Act*.

64. Defendant Mortgagee, as described above, has aided and/or abetted Defendant Insurance Company in its violations of *Texas Prompt Payment of Claims Act*.

65. Defendant Mortgagee aided and/or abetted the *Texas Prompt Payment of Claims Act* violations described above.  Defendant Mortgagee, upon information and belief, knew that the actions of Defendant Insurance Company constituted violations of *Texas Prompt Payment of Claims Act*. Defendant Mortgagee nonetheless intended to aid and/or abet those violations.

66. Defendant Mortgagee, upon information and belief, provided substantial assistance and/or encouragement to Defendant Insurance Company in committing the *Texas Prompt Payment of Claims Act* violations.

67. As described above, Plaintiff has a claim under an insurance policy, the insurer is liable for the claim and the insurer has failed to comply with the requirement of *Texas Prompt Payment of Claims Act.* TEX. INS. CODE § 542.051-542.061.

68. As described above, Defendant Insurance Company failed to perform one or more of the following duties not later than the 15th day (30th day if Defendant Insurance Company is a surplus lines insurer) after receipt of notice of at the claim:[1]

    a.      Acknowledge the claim. Defendant Insurance Company failed to acknowledge receipt of the claim, including separate claims arising from the same incident. TEX. INS. CODE § 542.055(a)(1). See *Dunn v. Southern Farm Bur. Cas. Ins. Co.,* 991 S.W.2d 467, 472 (Tex. App.-Tyler 1999, pet. denied);

    b.      Record the acknowledgement. Defendant Insurance Company failed to make a record of the date, means, and content of the acknowledgement. TEX. INS. CODE § 542.055(c);

    c.      Commence the investigation. Defendant Insurance Company failed to make commence a reasonable investigation of the claim. TEX. INS. CODE § 542.055(a)(2); and/or

    d.      Request information from the claimant. Defendant Insurance Company failed to request from the Plaintiff all items, statements and forms reasonably needed from Plaintiff. TEX. INS. CODE § 542.055(a)(3).

---

[1] TEX. INS. CODE § 542.055(a)

69. As described above, Defendant Insurance Company failed to perform one or more of the following duties after Defendant Insurance Company received all items, statements, and forms reasonable required by the Plaintiff:

a.   Accept of reject the claim.  Defendant Insurance Company failed to notify Plaintiff by the 15th "business day" that Defendant Insurance Company either accepts or rejects the claim.[2]  TEX. INS. CODE § 542.056(d);

b.   State reasons for any rejection.  Defendant Insurance Company failed to notify Plaintiff of any reasons for denying such claim.  TEX. INS. CODE § 542.056(c);

c.   Ask for more time and tell why it is needed.  Defendant Insurance Company failed to notify Plaintiff it needed more time and the reasons for seeking more time.  TEX. INS. CODE § 542.056(d);

d.   Pay the claim after accepting.  Defendant Insurance Company failed to pay the claim within five "business days" or twenty days if Defendant Insurance Company is a surplus lines insurer. TEX. INS. CODE § 542.057(a),(c);

e.   Pay the claim after the claimant performs any condition.  If Defendant Insurance Company sought a condition on Plaintiff, it did not pay such claim within five "business days" or twenty days if Defendant Insurance Company is a surplus lines insurer after such condition was satisfied. TEX. INS. CODE § 542.057(b); and/or

f.   Pay the claim within 60 days after receipt of information.  Defendant Insurance Company

---

[2] Defendant has not indicated it suspects arson thus allowing 30 days. TEX. INS. CODE § 542.056(b)
[3] Defendant has not sought a 45 day extension.  TEX. INS. CODE § 542.056(d)

failed to pay the claim within 60 days after receiving the items requested from Plaintiff. TEX. INS. CODE § 542.058(a).

**COUNT 5:**

**AGAINST ALL DEFENDANTS**

**Unfair Insurance Practices:**

**Texas Insurance Code, Chapter 541**

70. Defendant Insurance Company's conduct, as described above, constitutes multiple violations of Unfair Insurance Practices.

71. Defendant Mortgagee has aided and/or abetted Defendant Insurance Company in its continued violations of *Unfair Insurance Practices* by allowing Defendant Insurance Company to, for example:

   a. Making false representations as to the property owner as to the amount of loss sustained to the insured property;

   b. In exchange for money, allowing Defendant Insurance Company to unfairly delay and deny valid insurance payments to the property owner;

   c. In exchange for money, allowing Defendant Insurance Company to charge the property owner up to ten times the market rate of homeowner's insurance to insure the property in question; and

   d. In exchange for money and to the detriment of the property owner, allowing Defendant Insurance Company to flagrantly violate Texas Insurance Code 541 and 542 and Texas Business and Commerce Code, Chapter 17.

72. Defendant Mortgagee aided and/or abetted the *Unfair Insurance Practices* violations described above. Defendant Mortgagee, upon information and belief, knew that the actions of Defendant Insurance Company constituted violations of *Unfair Insurance Practices*. Defendant Mortgagee nonetheless intended to aid and/or abet those violations.

73. Defendant Mortgagee, upon information and belief, provided substantial assistance and/or encouragement to Defendant Insurance Company in committing the *Unfair Insurance Practices* violations.

74. Defendant Insurance Company engaged in one or more of the following settlement practices with respect to a claim made by Plaintiff[4]:

   a.   misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

   b.   failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim:

   i.   with respect to which the Defendant Insurance Company's liability has become reasonably clear; or

   ii.   a claim under one portion of the policy of the claim with respect to which the Defendant Insurance Company's liability has become reasonably clear in order to influence Plaintiff to settle an additional claim under another portion of the coverage, unless payment under one portion of the coverage constitutes evidence of liability under another portion of the policy;

   c.   failing to provide promptly to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for Defendant Insurance Company's denial of the claim

or for the offer of a compromise settlement of the claim;

d.     failing within a reasonable time to:

      i.     affirm or deny coverage of a claim to Plaintiff;

      ii.    submit a reservation of rights to a Plaintiff;

e.     refusing, failing, or unreasonably delaying an offer of settlement under first-party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as may be specifically provided in the policy;

f.     undertaking to enforce a full and final release of a claim from a policyholder when only a partial payment has been made, unless the payment is a compromise settlement of a doubtful or disputed claim; and/or

g.     requiring Plaintiff, as a condition of settling a claim, to produce Plaintiff's federal income tax returns for examination or investigation.

75. Defendant Insurance Company may have engaged in one or more of the following settlement practices with respect to a claim made by Plaintiff[5]:

a.     misrepresentations and false advertising of policy contracts;

b.     false information and advertising generally;

c.     defamation of insurers or persons engaged in the business of insurance;

---

[4] TEX. INS. CODE § 541.060
[5] TEX. INS. CODE § 541.151

d. boycott, coercion, and intimidation in the business of insurance;

e. false financial statements;

f. stock operations and advisory board contracts;

g. unfair discrimination;

h. rebates;

i. deceptive names, words, symbols, devises, and slogans; and/or

j. misrepresentation of the insurance policies;

76. Defendant Insurance Company engaged in one or more of the following settlement practices with respect to a claim made by Plaintiff[6]:

a. making an untrue statement of material fact;

b. failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

c. making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of a material fact;

d. making a material misstatement of law; and/or

e. failing to disclose a matter required by law to be disclosed, including failing to make disclosure in accordance with an other provision of the insurance code.

---

[6] TEX. INS. CODE § 541.061

## COUNT 6:

## AGAINST ALL DEFENDANTS

### Fraud

77. Defendant Insurance Company knowingly and with reckless disregard for the Plaintiff in the course of handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the actual damages resulting from the peril and Plaintiff having relied upon such fraudulent conduct, have been injured.

78. Defendant Insurance Company knowingly and with the reckless disregard for the Plaintiff in the course of handling of this subject claim made false statements, misrepresented material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the rights, duties, and insurance benefits in the subject contract for insurance, and Plaintiff having relied upon such fraudulent conduct, have been injured.

79. The conduct described was done intentionally and for the purpose of having Plaintiff rely on such fraudulent conduct thereby causing Plaintiff to suffer injury.

80. Defendant Mortgagee aided and/or abetted the fraud as described above. Defendant Mortgagee, upon information and belief, knew that the actions of Defendant Insurance Company constituted fraud. Defendant Mortgagee nonetheless intended to aid and/or abet those violations.

81. Defendant Mortgagee, upon information and belief, provided substantial assistance and/or encouragement to Defendant Insurance Company in committing fraud.

## COUNT 7:

## AGAINST ALL DEFENDANTS

## **Ongoing Conspiracy to Commit Illegal Acts**

82. Defendant Insurance Company and Defendant Mortgagee are member of a combination of two or more persons whose object was to accomplish the stated illegal acts upon Plaintiff. Defendant Insurance Company and Defendant Mortgagee, by and through their agents, reached a meeting of the minds and acted in such a manner as to further the conspiracy by knowingly and with reckless disregard for the Plaintiff in the course of purchasing/selling of the lender-placed policy for a price that well exceeds the market rate in exchange for unearned "kickbacks" and in the handling of this subject claim by making false statements, misrepresenting and concealing material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the actual damages resulting from the peril of said claim, and Plaintiff having relied upon such conduct has been injured.

83. Defendant Insurance Company and Defendant Mortgagee, by and through its agents, reached a meeting of the minds and acted in such a manner as to further the conspiracy to commit stated illegal acts by knowingly and with reckless disregard for the Plaintiff in the course of purchasing/selling of the lender-placed policy for a price that well exceeds the market rate in exchange for unearned "kickbacks" and in the handling of this subject claim by making false statements, misrepresenting and concealing material facts, and engaged in actions and/or omissions for the purpose of misleading Plaintiff as to the rights, duties, and insurance benefits in the subject contract for insurance, and Plaintiff having relied upon such conduct has been injured.

84. The conduct described was done intentionally and for the purpose of having Plaintiff rely on such fraudulent conduct thereby causing Plaintiff to suffer injury.

## **COUNT 8:**

## **AGAINST DEFENDANT MORTGAGEE**

## A.

## Breach of Fiduciary Duty

85. The underlying relationship between Defendant Mortgagee and Defendant Insurance Company illustrates an extraordinary circumstance as identified in *In re Absolute Resource Corp. v. Hurst Trust*, 76 F. Supp. 2d 723, 724 (N.D. Tex. 1999) which creates a fiduciary relationship.

86. The lender is the owner and the insured to a lender-placed policy for Plaintiff's residence.

87. Plaintiff is listed as an additional insured / borrower.

88. Typically, during an insurance claim the insurer for a lender-placed policy will speak directly to the lender and minimize interaction with and ignore Plaintiff and her representatives.

89. The lender charges Plaintiff and purchases lender-placed insurance for Plaintiff's residence.

90. The lender receives kick-backs in exchange for the underlying lender-placed policy which creates an inherent conflict of interest in its duty, at minimum, to require Defendant Insurance Company to pay adequate compensation for property damage to the insured premises.

91. In exchange for monies paid by the insurer, the lender has used excessive control and influence to the detriment of Plaintiff to the extent of purchasing lender-place insurance at an outrageous rate, intentionally or passively allowing the insurer to delay, deny, or pay inadequately compensate for property damages sustained at Plaintiff's residence.

92. Theretofore, a fiduciary relationship must exist between Plaintiff and Defendant Mortgagee as Defendant Mortgagee must have a duty owed to Plaintiff. Defendant Mortgagee has flagrantly breached its fiduciary duty by, for example, purchasing insurance in exchange for kick-backs and allowing Defendant Insurance Company to delay, deny, and underpay the underlying claim at issue for property damage sustained at Plaintiff's residence.

93. As a result of Defendant Mortgagee's breach, Plaintiff has suffered money damages.

94. <u>Exemplary damages.</u> Plaintiff's injury resulted from defendant's gross negligence or malice, which entitles plaintiff to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

## B.

### Breach of Duty of Loyalty

95. Defendant Mortgagee used its position as Plaintiff's mortgage company to benefit itself at the expense of Plaintiff or placed itself in a position in which its self-interest conflicted with its obligations to protect the interests of Plaintiff and the underlying property secured by the mortgage held by Defendant Mortgagee. Such breach of duty of loyalty included, for example, purchasing insurance in exchange for kick-backs and allowing Defendant Insurance Company to delay, deny, and underpay the claim for property damage sustained at Plaintiff's residence in exchange for a sum of money.

96. As a result of Defendant Mortgagee's breach, Plaintiff has suffered money damages.

97. <u>Exemplary damages.</u> Plaintiff's injury resulted from defendant's gross negligence or malice, which entitles plaintiff to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

## C.

### Breach of Duty of Disclosure

98. Defendant Mortgagee breached his fiduciary duty of disclosure in that it failed to disclose material facts that were known to it that affected the rights of the Plaintiff. Defendant Mortgagee acts in breach of his fiduciary duty of disclosure for example by failing to inform Plaintiff that it received kick-backs for using Plaintiff's monies to purchase insurance from Defendant Insurance Company and that in exchange for said kick-backs it either passively or intentionally allows Defendant Insurance Company to delay, deny, and underpaid the insurance claim for property damage to Plaintiff's residence.

99. As a result of Defendant Mortgagee's breach Plaintiff has suffered money damages.

100. Exemplary damages. Plaintiff's injury resulted from defendant's gross negligence or malice, which entitles plaintiff to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

**D.**

**Breach of Duty of Reasonable Care**

101. Defendant Mortgagee breached its duty to use reasonable care for Plaintiff, in instance by purchasing an insurance policy that cost up to ten times that of the market value of a similar policy. Defendant Mortgagee purchased this policy because it receives an unearned kick-back or commission. Defendant Mortgagee failed to exercise the degree of care that a reasonable prudent person would devote to his or his own affairs. Defendant Mortgagee's acts in breach of its fiduciary duty to use reasonable care include purchasing insurance in exchange for kick-backs and intentionally or passively allowing Defendant Insurance Company to delay, deny, and underpay the insurance claim for property damage to Plaintiff's residence.

102. As a result of Defendant Mortgagee's breach, Plaintiff has suffered money damages.

103. Exemplary damages. Plaintiff's injury resulted from defendant's gross negligence or malice, which entitles plaintiff to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

**IX.**

**Damages and Prayer**

104. WHEREFORE, PREMISES CONSIDERED, Plaintiff herein, complains of Defendants and prays that Defendants be cited to appear and answer and that on a final trial on the merits, Plaintiff recover from Defendants the following:

a.   Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and or producing causes of damages sustained by Plaintiff.

b.      For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of the policy benefits withheld, together with consequential damages and attorney's fees.

c.      For noncompliance with the *Texas Unfair Competition and Unfair Practices Act,* Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the policy, including but not limited to direct and indirect consequential damages, mental anguish, court costs and mandatory attorney's fees. See *Rosenblatt v. Freedom Life Ins. Co. of Am.,* 240 S.W.3d 315, 2007 Tex. App. LEXIS 6177 (Tex. App.—Houston [1st Dist.] 2007, no pet.) For knowing and intentional conduct of the acts complained of, Plaintiff asks for three times economic damages and three times mental anguish damages. See TEX. INS. CODE § 541.152 and TEX. BUS. & COM. CODE § 17.50.

d.      For noncompliance with *Texas Prompt Payment of Claims Act*, which is strict liability without any good faith exceptions, Plaintiff is entitled to the amount of her claims, as well as eighteen (18) percent interest on the total amount of the claim per annum post judgment interest, as allowed by law, and for any other further relief, either at law or in equity, to which she may show here to be justly entitled. See *Am. Nat'l. Prop. & Cas. Co. Inc. v. Patty*, No. 05-00-01171-CV, 2001 Tex. App. LEXIS 5493 (Tex. App.—Dallas Aug. 15, 2001, pet. denied) (unpublished). The formula for calculating the interest penalty under this article is "I = P R T," where "I" is interest, "P" equals the principal, "R" equals the rate of interest, and "T" equals time over which interest is to be calculated. Thus, where the insurer tendered less than the face value of the policy, the penalty should have been calculated until judgment was entered against the insurer. Tender of partial payment of a claim does not reduce the penalty: the penalty is calculated based on the amount of the "claim," not the difference between the claim and any

partial payment that is made. See *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.,* 106 S.W.3d 174, 183-84 (Tex.App.—Amarillo 2003, pet. denied). Also See *Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 461 (5th Cir. 1997). Violations of Tex. Ins. Code § 542 are strict liability without any exception.

e.  For breach of the common law duty of good faith and fair dwelling, actual damages, direct and indirect consequential damages, exemplary damages and mental anguish as to be determined by the jury. See *Lee v. Safemate Life Ins. Co.,* 737 S.W.2d 84, 1987 Tex. App. LEXIS 8111 (Tex. App.—El Paso 1987, writ dism'd). Exemplary damages are recoverable for a breach of duty of good faith and fair dealing under the same principles allowing recovery of those damages in other tort actions; mental anguish damages are recoverable for a breach of duty of good faith and fair dealing under the same principles allowing recovery of those damages in other tort actions.

f.  For fraud, Plaintiff seeks damages for breach of contract. *Albin v. Isotron Corp.,* 421 S.W.2d 739, 744 (Tex. Civ. App.-Texarkana 1967, writ ref'd n.r.e). Upon a finding of actual fraud, Plaintiff seeks exemplary damages as to be determined by the jury. TEX. CIV. PRAC. & REM. § 41.003(a)(1).

g.  For ongoing civil conspiracy, Plaintiff seeks joint and several damages to which the conspirators caused Plaintiff along with exemplary damages as determined by the jury.

h.  Plaintiff seeks attorney fees at a contingent rate of forty-five percent as allowed by law. If attorney fees must be quantified at an hourly rate, Plaintiff seeks attorney fees at $450 an hour. See *Mid-Century Ins. Co. v. Barclay,* 880 S.W.2d 807, 1994 Tex. App. LEXIS 1480 (Tex. App.—Austin 1994, writ denied). Attorney's fees are awarded to a party as part of the

damages owed by an insurance company that violates this chapter, and it is appropriate to require the insurer to pay a contingency fee, which may be greater than an hourly fee. The specter of large attorney's fee awards may serve as additional incentive to the insurance company to respond promptly and diligently to its insured's claims.

i.      Furthermore, the denial and/or wrongful delay to provide Plaintiff with insurance benefits by Defendants was apparently part of a common plan, routine, scheme, and design calculated to deny insurance benefits to policy holders. In order to punish Defendants and to set an example and thereby prevent other policyholders from being treated in this manner, exemplary damages should be awarded. Accordingly, Plaintiff seeks exemplary damages in an amount the jury deems appropriate.

j.      For negligent misrepresentation, plaintiff is entitled to actual damages in the form of pecuniary loss, exemplary damages, interest, and court costs. Pecuniary loss includes (1) the difference between the value and (2) loss otherwise suffered as a consequence of plaintiff's reliance of the misrepresentation.

k.      For breaches of fiduciary duty in addition to punitive damages and mental anguish, Plaintiff seeks that Defendant Mortgagee make an accounting and disgorges the profits and fees made by Defendant Mortgagee from the mortgage held by it on the insured property and the monies Bank of America received in kick-backs from Defendant Insurance Company in its purchase/sale of the lender-placed policy.

l.      Plaintiff seeks a judgment against Defendants in an amount within the jurisdictional limits of this court.

m.      Plaintiff seeks any other relief in equity or good conscience she is entitled to.

m.     Plaintiff seeks general relief.

## IX.

## DISCOVERY RULE / FRAUDULENT CONCEALMENT / EQUITABLE ESTOPPEL

105.  Plaintiff did not discovery that Defendants had engaged in the false, misleading or deceptive acts or practices set forth above until a few days before filing this underlying lawsuit when it consulted with her retained attorney – nor should have Plaintiff discovered such acts or practices prior to that time.

106.  Defendants' false, misleading, and/or deceptive acts or practices related to a variety of complex factual and/or legal issues, which Defendants knew to be well beyond the knowledge and understanding of Plaintiff. For that reason, Plaintiff justifiably relied Defendants.

107.  In addition, Defendants fraudulently concealed their wrongdoing from Plaintiff. Despite having actual knowledge that they had engaged in false, misleading, or deceptive acts or practices, Defendants concealed their wrongdoing from Plaintiff by making continued misrepresentations and by remaining silent when they had a duty to disclose such wrongdoing to Plaintiff. Defendants made or caused to make specific misrepresentations to Plaintiff.

108.  Defendants had a fixed purpose to conceal their wrongdoing. Plaintiff, moreover, reasonably relied on Defendants misrepresentations and/or omissions to her detriment.

109.  Defendants, moreover, should be equitably estopped from raising the defense of limitations. As noted above, Defendants concealed their wrongdoing and made misrepresentations to Plaintiff. Plaintiff reasonably relied upon such misrepresentation to their detriment.

## XI.

## JURY DEMAND

110.  Plaintiff respectfully demands a trial by jury and remits such fee.

## XII.

## PLAINTIFF MAKES 194 REQUESTS TO ALL DEFENDANTS

111. In addition to the content subject to disclosure under Rule 194.2, Plaintiff requests disclosure of all documents, electronic information, and tangible items that the Defendants have in its possession, custody, or control and may use to support Defendants' claims or defenses.

Respectfully Submitted,

**DICK LAW FIRM, PLLC**

Eric B. Dick, LL.M.
TBN: 24064316
FIN: 1082959
DICK LAW FIRM, PLLC
3701 Brookwoods Drive
Houston, Texas 77092
(832) 207-2007 Office
(713) 498-7969 Cellular
www.dicklawfirm.com
eric@dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**